IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ANTWON KENNEDY,

    Plaintiff,

v.

INDUSTRYPRO.COM, INC.,

    Defendant.

CIVIL ACTION FILE

NO. 1:15-CV-2573-MHC

## ORDER

This case comes before the Court on Defendant's Motion for Summary Judgment [Doc. 37].

I.    BACKGROUND[1]

Plaintiff Antwon Kennedy ("Plaintiff") was an intern for Defendant IndustryPro.com ("Defendant" or "IndustryPro") while he was a student at

---

[1] At the outset, the Court notes that it views the evidence presented by the parties in the light most favorable to Plaintiff. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Sunbeam TV Corp. v. Nielsen Media Research, Inc., 711 F.3d 1264, 1270 (11th Cir. 2013). In addition, the Court has excluded assertions of facts by the parties that are immaterial or presented as arguments or legal conclusions or any fact not supported by citation to evidence (including page or paragraph number). LR 56.1B(1), NDGa. Further, the Court accepts as admitted those facts in the parties' statements of material facts that have not been specifically controverted with citation to the relevant portions of the record. LR 56.1B(2), NDGa. See Def.'s Statement of Undisputed Facts [Doc. 37-2] ("Def.'s SUF"); Pl.'s Resp. to Def.'s SUF [Doc. 40-2].

Kennesaw State University ("KSU") from September 11, 2014, through November 13, 2014, and again from January 12, 2015, through April 18, 2015. Dep. of Antwon Kennedy dated Feb. 1, 2016 [Doc. 39] ("Kennedy Dep.") at 55-56; Compl. [Doc. 1-1] ¶¶ 1, 5. Plaintiff worked approximately ten hours a week on average. Kennedy Dep. at 61-62; Compl. ¶ 5. Plaintiff's job was to search for potential clients and, to that end, he searched industry publications and commercial databases for acquisitions, owners, buyers, and industry trends and built databases with contact information. Kennedy Dep. at 59-60; Compl. ¶¶ 7, 9. On one occasion, Plaintiff received training in the form of a workshop Defendant put together for all of the interns. Kennedy Dep. at 62-63; Compl. ¶ 10.

Plaintiff received three hours of school credit from KSU for working for Defendant, which was applied to his bachelor's degree at KSU. Kennedy Dep. at 61; Compl. ¶ 6. In order to receive the school credit, Plaintiff had to enroll in a corresponding KSU internship course. Kennedy Dep. at 82-83; Email from Plaintiff to Daniel Pakkala at IndustryPro dated Jan. 12, 2015, attached as Ex. 5 to Kennedy Dep. (confirming that Plaintiff was enrolled in KSU's internship course). The internship program also provided Plaintiff an opportunity to receive commissions if the research he performed resulted in a conference call or a transaction with a potential client; Plaintiff received two commissions for $100.00

each.  Kennedy Dep. at 79; Email from KSU administration to Plaintiff dated Oct. 9, 2014, attached as Ex. A to Compl. (advertising the IndustryPro internship and indicating the opportunity to earn compensation in the form of a commission: "Should an intern's acquisition search result in a conference call or a transaction, there is potential for performance-based compensation.  An intern could earn up to a $30.000 commission (amount varies with transaction size)."); Compl. ¶¶ 5, 8.  Plaintiff acknowledges "that some of the training [given to him] was similar to training which would be given in an educational environment."  Compl. ¶ 17.

Plaintiff alleges that he played an essential role in Defendant's business plan by securing new clients.  Id. ¶ 15.  Without his services, Plaintiff contends that Defendant would have had to hire workers to search industry publications and commercial databases to identify acquisitions, owners, buyers, and industry trends.  Id.  Plaintiff contends that Defendant realized a benefit from the relationship in the form of new clients and increased revenue.  Id. ¶ 16.

Plaintiff, proceeding *pro se*, has filed the above-styled lawsuit under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (2012) ("FLSA"), alleging that Defendant misclassified him as an unpaid intern and failed to pay him a minimum wage for the hours he worked.  Id. ¶¶ 12-19.  Plaintiff also alleges that, by not paying him, Defendant violated the Georgia Minimum Wage Law, O.C.G.A. § 34-

4-3 *et seq*. Id. ¶ 20. Plaintiff seeks $1,740.00 for the twenty-four weeks he worked for Defendant. Id. ¶ 21.

## II.   LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A party seeking summary judgment has the burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions," and cannot be made by the district court in considering whether to grant summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); see also Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999).

If a movant meets its burden, the party opposing summary judgment must present evidence that shows there is a genuine issue of material fact or that the movant is not entitled to judgment as a matter of law. Celotex, 477 U.S. at 324. In determining whether a genuine issue of material fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party

opposing summary judgment, "and all justifiable inferences are to be drawn" in favor of that opposing party. Anderson, 477 U.S. at 255; see also Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). A fact is "material" only if it can affect the outcome of the lawsuit under the governing legal principles. Anderson, 477 U.S. at 248. A factual dispute is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. Id.

"If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Herzog, 193 F.3d at 1246. However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. Matsushita, 475 U.S. at 587.

### III. ANALYSIS

Plaintiff's single-count Complaint seeks payment in the amount of $1,740.00, plus other related damages, for the twenty-four weeks he worked for Defendant. The FLSA requires employers to pay all "employees" a set minimum wage and an overtime wage for all hours worked in excess of forty hours per week. See 29 U.S.C. §§ 206-07. Defendant has moved for summary judgment arguing that Plaintiff was not an "employee" within the meaning of FLSA jurisprudence.

Although the text of the statute is the starting point for a determination of whether Plaintiff qualifies as an employee under the FLSA, the statute itself does not provide an answer to this question because its definition of employee is circular: an employee is "any individual employed by an employer." 29 U.S.C. § 203(e). "Employ," in turn, is defined by the FLSA as "to suffer or permit to work." 29 U.S.C. § 203(g).

> The definition "suffer or permit to work" was obviously not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of another. Otherwise, all students would be employees of the school or college they attended, and as such entitled to receive minimum wages. So also, such a construction would sweep under the Act each person who, without promise or expectation of compensation, but solely for his personal purpose or pleasure, worked in activities carried on by other persons either for their pleasure or profit. But there is no indication from the legislation now before us that Congress intended to outlaw such relationships as these. The Act's purpose as to wages was to insure that every person whose employment contemplated compensation should not be compelled to sell his services for less than the prescribed minimum wage. The definitions of "employ" and of "employee" are broad enough to accomplish this. But, broad as they are, they cannot be interpreted so as to make a person whose work serves only his own interest an employee of another person who gives him aid and instruction.

Walling v. Portland Terminal Co., 330 U.S. 148, 152 (1947).

Since the Supreme Court's ruling in Portland Terminal, courts in cases dealing with facts similar to those present in this case have "considered the entirety of the circumstances" and "concentrated on evaluating the 'primary beneficiary' of

the training or school program to determine whether participants constituted 'employees' under the FLSA, generally concluding that such an approach reveals the 'economic reality' of the situation." Schumann v. Collier Anesthesia, P.A., 803 F.3d 1199, 1209-10 (11th Cir. 2015); see also Kaplan v. Code Blue Billing & Coding, Inc., 504 F. App'x 831, 834 (11th Cir. 2013). "[W]hen a person works for his own advantage or personal purpose – particularly when his work provides no 'immediate advantage' for his alleged 'employer' – he is not an 'employee' under the FLSA." Kaplan, 504 F. App'x at 834 (quoting Portland Terminal, 330 U.S. at 153). To determine the economic reality of whether a person is an intern or an employee, the Eleventh Circuit adopted a test in which district courts apply the following non-exhaustive set of factors:

> 1. The extent to which the intern and the employer clearly understand that there is no expectation of compensation. Any promise of compensation, express or implied, suggests that the intern is an employee – and vice versa.
>
> 2. The extent to which the internship provides training that would be similar to that which would be given in an educational environment, including the clinical and other hands-on training provided by educational institutions.
>
> 3. The extent to which the internship is tied to the intern's formal education program by integrated coursework or the receipt of academic credit.
>
> 4. The extent to which the internship accommodates the intern's academic commitments by corresponding to the academic calendar.

7

5. The extent to which the internship's duration is limited to the period in which the internship provides the intern with beneficial learning.

6. The extent to which the intern's work complements, rather than displaces, the work of paid employees while providing significant educational benefits to the intern.

7. The extent to which the intern and the employer understand that the internship is conducted without entitlement to a paid job at the conclusion of the internship.

Schumann, 803 F.3d at 1211-12 (citing Glatt v. Fox Searchlight Pictures, Inc., 791 F.3d 376, 384 (2d Cir. 2015), opinion amended and superseded, 811 F.3d 528 (2d Cir. 2016)). In determining the primary beneficiary through the analysis of these factors, "no one factor is dispositive and every factor need not point in the same direction for the court to conclude that the intern is not an employee," but the court "must engage in a weighing and balancing of all of the circumstances."[2] Schumann, 803 F.3d at 1202. The Court will consider these factors *seriatim*.

### A.   Expectation of Compensation

Both parties agree that there was the expectation that Plaintiff could potentially be compensated in a performance-based manner. For instance, the

---

[2] The mere fact that an alleged employer benefits from the alleged employee, standing alone, is not sufficient to render the person an employee under the FLSA. Schumann, 803 F.3d at 1211("[T]here is nothing inherently wrong with an employer's benefiting from an internship that also plainly benefits the interns.").

email that was sent to Plaintiff from KSU's career service office stated that "[s]hould an intern's acquisition search result in a conference call or a transaction, there is potential for performance-based compensation. An intern could earn up to a $30,000 commission (amount varies with transaction size)." Mem. of Law in Supp. of Def.'s Mot. for Summ. J. [Doc. 37-1] ("Def.'s Br.") at 4 (citing Kennedy Dep.). After Plaintiff applied for the internship, Defendant's representative, who oversaw the interns, clarified that a commission payment was a possible form of compensation through the internship:

> [i]nterns are not paid per se, but you do get paid in a variety of ways based on how well you perform. For example, for every CEO/President/Leader of a company that you sourced, that meets with one of our private equity groups to discuss a potential acquisition, you get $100 - whether they meet again or not. The real pay however comes if you successfully source a company that actually gets acquired. In such a case you will get a percentage of the enterprise value of the company. Payments for successfully accomplishing this range from $10,000 to $30,000. A KSU student walked away with some $20,000 a few months ago simply by looking online for a company that matched our PEG's requirements and it ended up in an acquisition.

Email from Daniel Pakkala dated Sept. 7, 2014, attached as Ex. 4 to Kennedy Dep. Consistent with these representations, Plaintiff acknowledges receiving two $100.00 commissions. Compl. ¶ 5. Plaintiff also acknowledges that he did not expect to be paid an hourly wage. Kennedy Dep. at 77-78.

9

The undisputed facts reveal that there was an expectation of compensation for performance-based commissions, but there was no expectation of hourly compensation. Defendant argues that, because there was no expectation of payment of hourly wages, the evidence Plaintiff relies upon related to the commissions is not relevant to Plaintiff's claim in this case that he is entitled to damages based on hourly wages. Further, Defendant emphasizes that there was no guarantee as to commission payments. Def.'s Br. at 13-15.

The Court finds that Defendant's argument misses the mark. In analyzing whether Plaintiff was an employee under this first factor, the Court does not consider whether he was promised a certain type or amount of compensation, or whether the compensation contemplated by the parties matches the type of compensation sought in the litigant's complaint. Rather, this factor considers simply whether the parties "clearly underst[ood] that there [was] no expectation of compensation." Schumann, 803 F.3d at 1211. In this case, the undisputed evidence is that the parties clearly understood that there was the potential for performance-based compensation. Far from making clear that there was no compensation, Defendant's representative indicated that another KSU student was actually paid $20,000.00. "Any promise of compensation, express or implied,

10

suggests that the intern is an employee." Schumann, 803 F.3d at 1211. In this case, this factor favors a finding that Plaintiff was an employee.

### B.  Similarity Between Internship Experience and Classwork

Defendant argues that, through the internship, Plaintiff was provided training that was similar to the training he received at KSU. Def.'s Br. at 15-17. Specifically, Defendant provided Plaintiff a workshop which was something "repetitive" of what he had previously learned at KSU. Kennedy Dep. at 90-92. Further, Defendant argues that Plaintiff acknowledged that the "kind of work that IndustryPro does is similar to what he learned in his KSU courses, such as corporate finance and investments." Def.'s Br. at 16 (citing Kennedy Dep. at 87-88).

Defendant points to an email it sent to Plaintiff which contained what Defendant characterizes as "learning material" in the form of information about one of Defendant's clients and included case studies of previous investments that the buyer had made. Id. at 17 (citing Kennedy Dep. at 88-89, Ex. 7). The email stated that the IndustryPro employee hoped the interns would "find some knowledge in this file that [they] didn't already have." Id. Plaintiff acknowledges that he received the email, but did not have time to read the attachment. Kennedy Dep. at 89.

11

In contrast to the evidence of the one workshop that was repetitive of information Plaintiff received from KSU and the learning material emailed to him, Plaintiff maintains that the majority of regular, recurring, and routine work he did for Defendant was in the form of sourcing new clients for Defendant. Plaintiff maintains that "[o]utside of the introduction packet, additional training was meager at best and primarily consisted of occasional search tips." Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. [Doc. 40] ("Pl.'s Resp.") at 8.

There is no indication in the record that this work performed by Plaintiff was "similar to that which would be given in an educational environment." Because the evidence before the Court suggests that most of his time was spent doing work that does not appear to be similar to his school work, this factor favors a finding that Plaintiff was an employee.

### C.     Receipt of Academic Credit

It is undisputed that Plaintiff received three credit hours for the work he performed for the Spring Semester of 2015. Plaintiff admits that the hours he worked as an intern corresponded with his KSU internship course requirements and was tied directly with the number of academic credit hours that he sought. Specifically, to earn the three credits for which he applied, Plaintiff was required to work a minimum of ten hours per week. Plaintiff does not deny that he received

credit for the work performed in the Spring semester, but maintains that he received no credit for the work he performed from September through November 2014.

This Court finds that this factor favors a finding that Plaintiff was not an employee. When a student's internship qualifies for academic credit, it is a significant indicator that the services provided should be viewed as part of an academic relationship between student and educational institution rather than as a conventional employment arrangement. Kaplan, 504 F. App'x at 834 (finding that student interns were not employees within the meaning the FLSA in part because they received academic credit for their internship).

### D.   Work Corresponding to the Academic Calendar

It is undisputed that Plaintiff's internship coincided with his Fall 2014 and Spring 2015 school schedules. It is also undisputed that Defendant accommodated Plaintiff's academic commitments, including his class schedules, his exams and his winter and spring breaks. Because Plaintiff's internship activities corresponded with his academic calendar, this activity is not indicative of an employer/employee relationship.

### E. Length of Internship

With regard to the fifth factor, the Court analyzes the extent to which the "internship's duration is limited to the period in which the internship provides the intern with beneficial learning." Schumann, 803 F.3d at 1212.

> In making this evaluation, the court should keep in mind that designing an internship is not an exact science. We cannot expect that the length of the internship will always match up perfectly with the skills to be taught and the experience to be gained through the program. An internship that is longer than absolutely necessary to accomplish the educational and experiential goals of the program does not necessarily weigh in favor of a determination that the intern is an "employee." Instead, the court should consider whether the duration of the internship is grossly excessive in comparison to the period of beneficial learning.

Schumann, 803 F.3d at 1213-14. In addition, "the court should also evaluate the extent to which the nature of the training requires the daily schedule that the intern must endure." Id. at 1214.

In this case, two separate internships, which lasted approximately two and three months in duration, respectively, were not so excessive that this Court can conclude that they were inconsistent with beneficial learning. Moreover, Plaintiff admitted he worked on average no more than ten hours per week, which was not a difficult schedule to maintain. Accordingly, this factor does not favor a finding that Plaintiff was an employee.

14

### F.     Displacement of Defendant's Employees

"The sixth factor evaluates the extent to which the intern's work complements, rather than displaces, the work of paid employees while providing significant educational benefits to the intern." Id. at 1214. Defendant maintains that Plaintiff "did not displace the work of regular IndustryPro employees," and argues that one employee had to take time out of his schedule "to train and supervise Kennedy and the other interns." Def.'s Br. at 25-26.

In response, Plaintiff presents evidence of what he contends demonstrates that Defendant relied on the interns to compile lists of prospective clients in order to maximize productivity. See email from Zach Zirkle to Plaintiff dated Oct. 22, 2014, attached as Ex. G to Pl.'s Resp. [Doc. 40-8] at 2. In reality, this evidence is an apparent attempt to describe Plaintiff's internship requirements. Id. More importantly, nothing in the evidence presented by Plaintiff indicates that his work as an intern displaced any work of paid employees. Plaintiff also presents discovery responses from Defendant which he claims indicate that the job he was expected to perform as an intern was also part of the job description of paid analysts at IndustryPro. See Def.'s Resps. to Interrogs. [Doc. 40-7] at 5. This evidence also fails to establish that any intern displaced a paid employee at IndustryPro. Because Plaintiff has not offered any evidence that his work

15

displaced the work of paid employees at Defendant, this factor does not favor a finding that Plaintiff was an employee.

### G. No Expectation of Employment

The undisputed evidence is that Plaintiff understood he was not entitled to a paid job with Defendant at the conclusion of his internship, and was explicitly informed that "[d]epending on your level of performance and dedication, you may be selected to join IndustryPro as a full-time analyst." Email from KSU administration to Plaintiff dated Oct. 9, 2014, attached as Ex. A to Compl. At his deposition, Plaintiff testified that the internship notice made clear that there was no guarantee of a full-time position and, perhaps more importantly, testified that nobody promised or guaranteed him a permanent position at the conclusion of his internship. Kennedy Dep. at 125-26. Because there was no expectation by either party that Plaintiff would be entitled to a paid job at the conclusion of the internship, this factor favors a finding the Plaintiff was not an employee.

After weighing and balancing of all of the circumstances in this case, including the analysis of all the factors delineated in Schumann, this Court concludes that Plaintiff, as a student intern, was the primary beneficiary of the relationship with Defendant and, therefore, was not an "employee" within the meaning of the FLSA. See Gerard v. Mitchell Sys., No. CV 14-4999 DSF (SHx),

2016 WL 4479987, at *7 (C.D. Cal. Aug. 22, 2016) (granting summary judgment to the defendants where he plaintiffs were the primary beneficiaries of clinic work, even if there was an incidental benefit to the defendants); Mark v. Gawker Media LLC, No. 13-CV-4347(AJN), 2016 WL 1271064, at *12-13 (S.D.N.Y. Mar. 29, 2016) (granting summary judgment to the defendants where totality of the circumstances showed that the benefits from the internship to plaintiff outweighed those received by the defendants).

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [Doc. 37] is **GRANTED**. The Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED** this 27th day of December, 2016.

_____
MARK H. COHEN
United States District Judge